UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BENJAMIN DAVID AYERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 723CV00419 |
| | ) |
| WAL-MART ASSOCIATES, INC., | ) |
| | ) JURY TRIAL DEMAND |
| Serve: | ) |
|    CT Corporation System, | ) |
|    Registered Agent | ) |
|    4701 Cox Road, Suite 285 | ) |
|    Glen Allen, VA 23060 | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Benjamin David Ayers, by counsel, comes before this Court to file this Complaint against Defendant Walmart-Associates, Inc. (hereinafter "Walmart"), and as grounds therefore states as follows:

**I.    JURISDICTION, VENUE, PARTIES**

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), and the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq.* and the ADA Amendments Act of 2008 ("ADAAA").

2. This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to Plaintiff's Virginia Code § 40.1-27.3 and Virginia Code §§ 2.2-3900, *et seq.* claims arose from the same basis of operative facts and same

1

controversies under the law. Pursuant to 28 U.S.C. § 1367(a), these claims are so related to claims involving original jurisdiction that they form part of the same case or controversy.

3. Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise occurred in Galax, Virginia, which is within the Western District of Virginia, Roanoke Division. *See* 28 U.S.C. § 1391(b)(2).

4. Defendant regularly conducts substantial business within Galax, Virginia.

5. Due to Defendant's contact within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

6. At all times material hereto, Walmart-Associates, Inc. is and was a Delaware corporation, with a principal place of business in Bentonville, AR, registered with Virginia's State Corporation Commission, and doing business across the United States, including in Virginia.

7. At all times material hereto, Plaintiff has been a resident of Galax, Virginia and is domiciled in Virginia.

8. Plaintiff timely filed a Complaint with the Virginia Office of Civil Rights and the Equal Employment Opportunity Commission on September 27, 2022, which was received by the Virginia Office of Civil Rights on September 28, 2022, and filed this suit within 90 days of receipt of the Notices of Right to Sue, which were issued as follows: (1) by the Equal Employment Opportunity Commission on April 12, 2023, and (2) by the Virginia Office of Civil Rights on April 14, 2023 (Exhibit A).

## II.     FACTUAL ALLEGATIONS

9. Benjamin Ayers was hired to work at the Walmart Supercenter located at 1140 E Stuart Drive in Galax, Virginia on or about August 29, 2020, as a Front-End Associate.

10. With respect to his sexual orientation, Mr. Ayers identifies as gay and, at all times

material hereto, has been in a committed same-sex relationship.

11. Mr. Ayers' supervision and peers at Walmart were aware of Mr. Ayers' sexual orientation and same-sex relationship.

12. With respect to disabilities, Mr. Ayers has several recognized disabilities. First, Mr. Ayers previously worked for a wood furniture factory, and his duties included repairing conveyer belts that were jammed by stray fragments of wood. During one of these repairs, Mr. Ayers' arm was pulled into the rollers that moved the belts, which crushed and severely injured his arm. Mr. Ayers suffers from PTSD from this accident, and his arm was permanently damaged. On occasion, Mr. Ayers' arm locks and becomes very painful to use. Mr. Ayers also has been diagnosed with Asperger's Syndrome, a condition on the autism spectrum that affects the ability to socialize and communicate effectively.

13. Mr. Ayers made his supervision at Walmart aware of his disabilities as further described herein.

14. Mr. Ayers requested the accommodation of not pushing shopping carts from outside the store to the inside of the store during colder weather and/or when he was experiencing issues with his arm due to his disability, and, when Mr. Ayers was able to push carts, he notified Walmart that he required the use of a cart mule as an accommodation for his disability.

15. Walmart honored Mr. Ayers' requests for accommodation for almost two years, until August 9, 2022, as will be further discussed herein.

16. On or about October 19, 2021, Mr. Ayers innocuously asked a female co-worker if she was married in an effort to get to know his coworker. As stated, Mr. Ayers' peers were aware of his sexual orientation and committed same-sex relationship, and his question was intended only as a friendly conversation starter. However, management disciplined Mr. Ayers for asking the

question, claiming it was "sexual harassment." Other employees were able to ask questions of this nature, without incident.

17. When discussing the marriage question with his Store Coach, Cynthia Poe, Mr. Ayers explained his disability again and detailed that sometimes he has difficulty picking up on social cues and perhaps he missed a social cue from the co-worker at issue. While speaking with Ms. Poe, Mr. Ayers requested to be transferred to another department where he would not be required to regularly communicate with others, but his request for accommodation was denied and, instead, Ms. Poe recommended to Mr. Ayers that he "watch" what he say and "learn to filter." Ms. Poe told Mr. Ayers, "You can't run from your issues," and informed him that he should "work on" himself.

18. Mr. Ayers then asked Ms. Poe if she intended to write up the co-workers who asked him about his relationship with his partner. These co-workers included Ms. Poe herself. Ms. Poe indicated that she intended to do so, although, upon information and belief, that was false and never occurred.

19. The next day, October 20, 2021, Mr. Ayers filed a complaint against Ms. Poe with Assistant Store Manager Cheryl Craft.

20. The resolution to Mr. Ayers' complaint regarding Ms. Poe was that Mr. Ayers would be transferred to another department after the holiday season. However, the transfer never took place.

21. Then, on or about April 29, 2022, Mr. Ayers, in passing, asked one of his co-workers if her brother, who also worked at Walmart, was gay. This was not done to embarrass, shame, or otherwise upset anyone but was merely an attempt to find common ground as Mr. Ayers is gay and has been in a long-term same-sex relationship. Mr. Ayers received another write-up

4

from Ms. Poe for this question. Mr. Ayers again explained to Ms. Poe the communication issues he suffers because of his condition, Asperger's Syndrome. Ms. Poe still disciplined Mr. Ayers and put him on probation.

22. Mr. Ayers again asked Ms. Poe if she intended to discipline the co-workers who asked him about his relationship with his partner, and although she said she would, upon information and belief, the issue was never looked into or otherwise addressed.

23. Continuing, Mr. Ayers works extremely well with children. He volunteered for two years with Poplar Springs Elementary in King, NC before he moved back to Virginia. At Walmart, Mr. Ayers was able to get children to stop crying in line by making a silly face or speaking with them to cheer them up. Many of the children who regularly accompanied their parent(s) and/or guardian(s) into the store recognized Mr. Ayers and came to speak with him. Mr. Ayers never received any negative complaints from parents. On the contrary, parents called in compliments to the store regarding Mr. Ayers' kind interactions with their children.

24. On or about June 29, 2022, a child in Mr. Ayers' line stopped crying after Mr. Ayers made a silly face. The parents appeared pleased, and there was no negative report from anyone regarding this event.

25. Despite this, Ms. Poe approached Mr. Ayers while he was working and told him, "Parents might not want you near their children and could even claim that you're sexually harassing them, so don't touch them or hold them or anything."

26. Mr. Ayers had not touched the child. When Mr. Ayers responded that he would never touch a child he did not know, Ms. Poe told him that he "shouldn't hold or touch any children even if they're related to [him]." Mr. Ayers was the only associate who was advised in this manner, and his fellow associates regularly touched and/or held their children or grandchildren who came

5

into the store. Mr. Ayers was deeply troubled by Ms. Poe's obvious insinuation, made in the presence of one of his co-workers, for no reason other than the fact that Mr. Ayers is a gay autistic man.

27. On July 12, 2022, Mr. Ayers submitted a report to the Walmart Ethics / Open-Door Helpline regarding Ms. Poe's discriminatory and retaliatory behavior towards him.

28. Walmart's policy is that these complaints are to be sent to Corporate Headquarters and assigned to an investigator to investigate, with the complainant receiving a response in 5-10 days.

29. Mr. Ayers never received a response to his report.

30. Then, on or about July 28, 2022, Mr. Ayers, who also suffers from hypoglycemia, was retaliatorily coached by Ms. Poe for purchasing a food item for himself while on the clock (he was feeling faint and lightheaded, and his symptoms can normally be resolved by eating something sugary). Despite every cashier within the Front-End department, including Customer Service Managers and Team Leads, routinely purchasing items while on the clock, Mr. Ayers was coached when others were not coached on the same matter.

31. Mr. Ayers thereafter submitted another report to the Walmart Ethics / Open-Door Helpline regarding Ms. Poe's continuing discriminatory and retaliatory behavior towards him.

32. Mr. Ayers was informed that Ms. Poe became aware of Mr. Ayers' reports of discrimination and retaliation.

33. Soon thereafter, on or about August 9, 2022, Ms. Poe demanded that Mr. Ayers push carts outside, when the only functioning cart mule was not available. Ms. Poe directed Mr. Ayers to complete this task despite Ms. Poe being fully aware of Mr. Ayers' disability and need for accommodation to push carts with the cart mule.

34. Mr. Ayers reminded Ms. Poe that he required the accommodation of a cart mule to complete this task due to his disability.

35. In response, even though Mr. Ayers had this accommodation in place for almost two years without issue, Ms. Poe indicated that either Mr. Ayers had to produce a doctor's note to that effect on the spot or he had to go push carts without the mule.

36. Mr. Ayers offered to obtain a doctor's note, but obviously could not do so instantaneously on the spot.

37. Even though Ms. Poe had to have recognized the impossibility of her request, Ms. Poe continued to force Mr. Ayers to go out into the parking lot to push carts without the assistance of a cart mule since he could not produce a doctor's note on the spot.

38. When Mr. Ayers properly indicated again that he could not push carts without the accommodation of the assistance of a cart mule due to his disability, Ms. Poe told Mr. Ayers to turn in his badge and his employment with Walmart was immediately terminated.

39. In summary, Mr. Ayers was targeted and discriminated against by Ms. Poe due to his sexual orientation, disabilities, and protected reports. When Mr. Ayers properly reported the discrimination and retaliation, nothing was done by Walmart, and, as a result, Ms. Poe's retaliation against Mr. Ayers increased, until she unlawfully terminated his employment on August 9, 2022.

**COUNT I: RETALIATION IN VIOLATION OF VIRGINIA CODE § 40.1-27.3**

40. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

41. Virginia Code § 40.1-27.3(A)(1) states that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment,

because the employee: Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official[.]"

42. Mr. Ayers reported numerous violations of law to his supervisors and Walmart's Ethics / Open-Door Helpline, including violations of Title VII, ADAAA, and Virginia Code § 2.2-3905.

43. The individuals retaliating against Mr. Ayers were aware of his protected acts.

44. Walmart supervisors retaliated against Mr. Ayers for his protected reports by disciplining him and terminating his employment.

45. Walmart's retaliatory acts happened in close temporal proximity to Mr. Ayers' protected reports.

46. The reason provided by Walmart for the termination was pretextual as Ms. Poe knew Mr. Ayers had a long-standing accommodation to utilize a mule to push carts and knew that it was impossible for Mr. Ayers to produce a doctor's note instantaneously, while at work.

47. During his employment, Mr. Ayers met or exceeded Walmart's reasonable business expectations.

48. Mr. Ayers was retaliated against due to his protected reports in violation of Virginia Code § 40.1-27.3.

49. As a direct and proximate result of the retaliation against Mr. Ayers, he has suffered and will continue to suffer pecuniary loss.

50. Pursuant to Virginia Code § 40.1-27.3, Mr. Ayers is entitled to "(i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for

lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

## COUNT II: DISCRIMINATION IN VIOLATION OF THE ADAAA

51. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

52. At all times relevant to this Complaint, Mr. Ayers was a qualified individual with disabilities, pursuant to the ADAAA.

53. Specifically, and at all times relevant, Mr. Ayers suffered from PTSD, limited function in one of his arms, Asperger's Syndrome, and hypoglycemia, which impaired several of Mr. Ayers' daily life activities and/or functions including the ability to socially interact, talking, and working.

54. In the alternative, Mr. Ayers was regarded by Walmart as being disabled.

55. At all times relevant, however, Mr. Ayers could perform the essential functions of his job with or without an accommodation.

56. At all times relevant, Mr. Ayers was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of Walmart.

57. Mr. Ayers revealed his disabilities to his supervisors and requested the following reasonable accommodations: (1) to be transferred to another department where he would not be required to regularly communicate with others, which was denied, (2) not pushing carts without the assistance of a cart mule, which was denied as of August 9, 2022.

58. Walmart discriminated against Mr. Ayers by disciplining Mr. Ayers and terminating his employment.

59. Walmart would not have disciplined Mr. Ayers or terminated Mr. Ayers' employment but for Mr. Ayers' disabilities.

60. Any reasons given by Walmart for its treatment of Mr. Ayers were pretextual.

61. Mr. Ayers' termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon his disabilities.

62. As a direct and proximate result of Walmart's actions, Mr. Ayers has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

63. At all times material hereto, Walmart engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Ayers so as to support an award of punitive damages.

64. The above-described acts by Walmart and employees of Walmart constitute disability discrimination in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq*. and the ADA Amendments Act of 2008.

## COUNT III: RETALIATION IN VIOLATION OF THE ADAAA

65. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

66. At all times relevant to this Complaint, Mr. Ayers was a qualified individual with disabilities, pursuant to the ADAAA.

67. Specifically, and at all times relevant, Mr. Ayers suffered from PTSD, limited function in one of his arms, Asperger's Syndrome, and hypoglycemia, which impaired several of Mr. Ayers' daily life activities and/or functions including the ability to socially interact, talking, and working.

68. In the alternative, Mr. Ayers was regarded by Walmart as being disabled.

69. At all times relevant, however, Mr. Ayers could perform the essential functions of his job with or without an accommodation.

70. At all times relevant, Mr. Ayers was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of Walmart.

71. Mr. Ayers revealed his disabilities to his supervisors and requested the following reasonable accommodations: (1) to be transferred to another department where he would not be required to regularly communicate with others, which was denied, (2) not pushing carts without the assistance of a cart mule, which was denied as of August 9, 2022.

72. Mr. Ayers made several reports of disability discrimination during his employment.

73. Walmart retaliated against Mr. Ayers by disciplining Mr. Ayers and terminating his employment.

74. Walmart would not have disciplined Mr. Ayers and terminated Mr. Ayers' employment but for Mr. Ayers' reports of disability discrimination and requests for reasonable accommodations.

75. Any reasons given by Walmart for its treatment of Mr. Ayers were pretextual.

76. Mr. Ayers' termination from employment occurred under circumstances that raise a reasonable inference of unlawful retaliation based upon his reports of disability discrimination and requests for accommodations.

77. As a direct and proximate result of Walmart's actions, Mr. Ayers has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

78. The above-described acts by Walmart and employees of Walmart constitute retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq*. and the ADA Amendments Act of 2008.

### COUNT IV: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA

79. Mr. Ayers incorporates herein by reference the preceding paragraphs of this Complaint.

80. At all times relevant to this Complaint, Mr. Ayers was a qualified individual with disabilities, pursuant to the ADAAA.

81. Specifically, and at all times relevant, Mr. Ayers suffered from PTSD, limited function in one of his arms, Asperger's Syndrome, and hypoglycemia, which impaired several of Mr. Ayers' daily life activities and/or functions including the ability to socially interact, talking, and working.

82. At all times relevant, however, Mr. Ayers could perform the essential functions of his job with or without an accommodation.

83. Mr. Ayers revealed his disabilities to his supervisors and requested the following reasonable accommodations: (1) to be transferred to another department where he would not be required to regularly communicate with others, which was denied, (2) not pushing carts without the assistance of mule, which was denied as of August 9, 2022.

84. Mr. Ayers' requests could have been accommodated without undue hardship to Walmart.

85. As a direct and proximate result of Walmart's actions, Mr. Ayers has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

86. At all times material hereto, Walmart engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Ayers so as to support an award of punitive damages.

87. The above-described acts by Walmart and employees of Walmart constitute failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq*. and the ADA Amendments Act of 2008.

### COUNT V: INTERFERENCE IN VIOLATION OF THE ADA

88. Mr. Ayers incorporates herein by reference the preceding paragraphs of this Complaint.

89. At all times relevant to this Complaint, Mr. Ayers was a qualified individual with disabilities, pursuant to the ADAAA.

90. Specifically, and at all times relevant, Mr. Ayers suffered from PTSD, limited function in one of his arms, Asperger's Syndrome, and hypoglycemia, which impaired several of Mr. Ayers' daily life activities and/or functions including the ability to socially interact, talking, and working.

91. At all times relevant, however, Mr. Ayers could perform the essential functions of his job with or without an accommodation.

92. Mr. Ayers revealed his disabilities to his supervisors and requested the following reasonable accommodations: (1) to be transferred to another department where he would not be required to regularly communicate with others, which was denied, (2) not pushing carts without the assistance of mule, which was denied as of August 9, 2022.

93. Walmart interfered with Mr. Ayers' ADAAA rights by refusing to appropriately engage in a dialogue with him concerning disability accommodations, improperly demanding a

doctor's note on the spot, denying Mr. Ayers' accommodation request, and treating Mr. Ayers differently, and less favorably, than similarly situated employees, ultimately resulting in Mr. Ayers' unlawful termination from employment.

94. As a direct and proximate result of Walmart's actions, Mr. Ayers has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

95. At all times material hereto, Walmart engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Ayers so as to support an award of punitive damages.

96. The above-described acts by Walmart and employees of Walmart constitute interference in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq*., specifically 42 U.S.C. § 12203(b), and the ADA Amendments Act of 2008.

## **COUNT VI: TITLE VII SEX / SEXUAL ORIENTATION DISCRIMINATION**

97. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

98. At all times relevant, Mr. Ayers has identified as gay and has been in a committed same-sex relationship.

99. Defendant discriminated against Plaintiff in violation of federal law in that Defendant discriminated against Plaintiff by treating him differently, and less favorably, than similarly situated employees, ultimately resulting in Mr. Ayers' unlawful termination from employment, on the basis of his sex / sexual orientation in violation of Title VII of the Civil Rights Act of 1964, as amended.

100. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

101. At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

102. The above-described acts of Defendant constitute sex / sexual orientation discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*.

### COUNT VII: TITLE VII RETALIATION

103. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

104. Defendant violated federal law when it retaliated against Plaintiff by terminating his employment on the basis of his complaints of sex / sexual orientation discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

105. As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary loss.

106. Defendant acted willfully toward Plaintiff with actual malice or with reckless disregard of the protected rights of Plaintiff so as to support an award of punitive damages.

107. The above-described acts of Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*.

### COUNT VIII: DISCRIMINATION IN VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT

108. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

109. At all times relevant, Mr. Ayers has identified as gay and has been in a committed same-sex relationship.

110. At all times relevant to this Complaint, Mr. Ayers was a qualified individual with disabilities, pursuant to the Virginia Human Rights Act.

111. Specifically, and at all times relevant, Mr. Ayers suffered from PTSD, limited function in one of his arms, Asperger's Syndrome, and hypoglycemia, which impaired several of Mr. Ayers' daily life activities and/or functions including the ability to socially interact, talking, and working.

112. At all times relevant, however, Mr. Ayers could perform the essential functions of his job with or without an accommodation.

113. Pursuant to Virginia Code § 2.2-3905(B), "It is an unlawful discriminatory practice for: (1) An employer to: a. Fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's … sexual orientation [or] … disability…; or b. Limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect an individual's status as an employee, because of such individual's … sexual orientation [or] … disability …."

114. Defendant discriminated against Plaintiff in violation of state law in that Defendant discriminated against Plaintiff by treating him differently, and less favorably, than similarly situated employees, ultimately resulting in Mr. Ayers' unlawful termination from employment, on the basis of his disabilities and sex / sexual orientation in violation of Virginia Code § 2.2-3905.

115. As a direct and proximate result of Defendant's actions, Mr. Ayers has suffered and will continue to suffer pecuniary loss, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

116. At all times material hereto, Walmart engaged in unlawful or discriminatory practices with malice or reckless indifference to the protected rights of Mr. Ayers so as to support an award of punitive damages.

117. Pursuant to Virginia Code § 2.2-3908, "the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate."

## COUNT IX: RETALIATION IN VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT

118. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

119. Pursuant to Virginia Code § 2.2-3905(B), "It is an unlawful discriminatory practice for: … (7)(i) An employer to discriminate against any employee … because such individual has opposed any practice made an unlawful discriminatory practice by this chapter …."

120. Defendant violated state law when it retaliated against Plaintiff by terminating his employment on the basis of his complaints of sexual orientation discrimination and disability discrimination in violation of the Virginia Human Rights Act.

121. As a direct and proximate result of Defendant's actions, Mr. Ayers has suffered and will continue to suffer pecuniary loss, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

122. At all times material hereto, Walmart engaged in unlawful or discriminatory practices with malice or reckless indifference to the protected rights of Mr. Ayers so as to support an award of punitive damages.

123. Pursuant to Virginia Code § 2.2-3908, "the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate."

Plaintiff, Benjamin David Ayers, prays for judgment against Defendant, Walmart-Associates, Inc., and for equitable relief, an injunction to restrain continued violations, the reinstatement of Plaintiff to the same position held before the retaliatory action or to an equivalent position or front wages and benefits, compensation for lost wages, benefits, and other remuneration, together with interest thereon, compensatory damages, punitive damages, attorney fees and costs, and for such other and further relief as may be just and equitable.

**TRIAL BY JURY ON ALL ISSUES FOR WHICH A JURY TRIAL MAY BE AWARDED IS REQUESTED.**

Respectfully submitted,

**BENJAMIN DAVID AYERS**

*/s/ Brittany M. Haddox*
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA  24018
Tel:  540-283-0802
brittany@strelkalaw.com
monica@strelkalaw.com
thomas@strelkalaw.com
leigh@strelkalaw.com

*Counsel for Plaintiff*